ant terminates is prescribed by the instrument creating the estate to be the giving of thirty days' notice to the tenant. The giving of this notice limits the term, causes it to cease, and to come to an end. If, after the estate has thus terminated, the tenant continues in possession of the premises, he becomes a mere holdover, and the landlord in such case is entitled by the terms of the statute to institute summary proceedings. This case is different from Low v. Thompson, 58 Misc. Rep. 541, 109 N. Y. Supp. 750, where the tenancy continued even after the default in payment of rent until the landlord elected to terminate the tenancy by re-entry for condition broken. In that case the landlord had not taken advantage of the option in the lease and terminated the tenancy by re-entry. The tenant was not therefore a holdover, and the case was not within the terms of the statute authorizing summary proceedings. In the present case the lease by its terms does not provide that, in order to terminate it, the landlord shall re-enter, but it is to come to an end upon the giving of the notice prescribed. This case more nearly resembles Martin v. Crossley, 46 Misc. Rep. 254, 91 N. Y. Supp. 712, where the lease provided that the landlord might at his option terminate it for any breach of its conditions by giving five days' notice, and "that upon the giving of said notice this lease and the said term and interests and all rights and claims in interest under this lease shall cease and end." The court held that the term had come to an end by virtue of the language of the lease upon giving the notice prescribed.

I think the order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(67 Misc. Rep. 577.)

PEOPLE v. BLEECKER ST. & F. F. R. CO.

(Supreme Court, Special Term, New York County. May, 1910.)

1. QUO WARRANTO (§ 1*)—ABOLITION OF WRIT—SUBSTITUTION OF REMEDY.
   The remedies formerly obtained by the writ of quo warranto can now be obtained by civil action under Code Civ. Proc. § 1983; such writ having been abolished.
   [Ed. Note.—For other cases, see Quo Warranto, Dec. Dig. § 1.*]

2. RAILROADS (§ 82*)—FAILURE TO EXERCISE FRANCHISE—FORFEITURE.
   A franchise for operating a railroad through public streets is disconnected from the corporate franchise of the corporation to which it is granted, and may be forfeited for failure to exercise it.
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. § 82.*]

3. FRANCHISES (§ 15*)—FORFEITURE OF FRANCHISE—FAILURE TO EXERCISE RIGHT.
   An action to prevent the unlawful use of a franchise may be maintained by the Attorney General on his own information or on the complaint of an individual, under Code Civ. Proc. § 1948, and such authority extends to an action of ouster as to one guilty of nonuser of the franchise.
   [Ed. Note.—For other cases, see Franchises, Dec. Dig. § 15.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

Action by the People against the Bleecker Street & Fulton Ferry Railroad Company. Motion for judgment on demurrer to complaint. Judgment for plaintiff.

See, also, 124 N. Y. Supp. 786.

Edward R. O'Malley, Atty. Gen., for the People.

Wollman & Wollman, for defendant.

GREENBAUM, J. The plaintiff moves for judgment upon the demurrer to the complaint of the plaintiff interposed in behalf of the defendant, the Bleecker Street & Fulton Ferry Railroad Company. The action is brought for the forfeiture of certain rights, privileges, or franchises acquired by the said defendant railroad company from the state Legislature and common council of the city of New York in respect of the operation and use of a surface railroad through certain designated streets in the city of New York on the ground of nonuser of some of said franchises and abandonment of others. The demurrer challenges the sufficiency of the complaint, and sets up a lack of legal capacity in the plaintiff to sue, in that leave of court has not been granted to bring this suit.

For the purposes of this discussion, it is unnecessary to detail the various assignments and leases of said franchises. It will suffice to state that by chapter 514 of the Laws of 1860 the Legislature granted to Stephen R. Roe and 11 other individuals and assigns special franchises "to lay, construct, operate and use as a railroad," etc., through certain streets in the city of New York. On December 12, 1864, the defendant, the Bleecker Street & Fulton Ferry Railroad Company, was organized under the general law authorizing the formation of railroad corporations (Laws of 1850, c. 140), and thereafter it acquired an assignment of the aforesaid special franchises. Subsequently, by chapter 199, Laws 1873, franchises similar to those acquired by the act of 1860 were granted the defendant, the Bleecker Street & Fulton Ferry Railroad Company, and by resolution of the common council a similar special franchise was granted through Mail street to said defendant. The said franchises ultimately were acquired as lessee or otherwise by the Metropolitan Street Railway Company, which now is in the hands of Adrian H. Joline and Douglas Robinson, as receivers. The defendant's contention is that an information under the common law, in the nature of a writ of quo warranto, under which such relief as is here sought was prosecuted, has been abolished in this state, and that the relief formerly obtained by means of this writ may now only be obtained by action "where an appropriate action therefor is prescribed" (Code Civ. Proc. § 1983), and that no such action as is here brought is prescribed by statute.

Counsel further argue that plaintiff may only proceed under former section 1798 of the Code (now Gen. Corp. Law [Consol. Laws, c. 23] § 131) in an action to annul the existence of a corporation, citing People v. Broadway R. R. Co., 126 N. Y. 29, 26 N. E. 961, in which case, however, leave of court therefor must be first granted as therein provided, and that, as no such leave is alleged to have been procured, the plaintiff cannot maintain this action. Defendant's position seems to me to be untenable. This action is not brought

to annul the franchise of defendant's railroad charter, but to oust it from the use of the franchise or privilege of constructing and operating a railroad through certain streets.   The latter franchise is wholly disconnected from the corporate franchise, and is a property right which may be granted to a private individual or a corporation, and may be forfeited by failure to exercise it.   This subject has been recently discussed in City of New York v. Bryan, 196 N. Y. 158, 163, 164, 89 N. E. 467.   Grants to use the public streets "are not part of corporate life if owned by a corporation, any more than they are a part of individual life if owned by a human being."   Lord v. Equitable Life Assur. Soc., 194 N. Y. 212, 226, 87 N. E. 443, 448, 22 L. R. A. (N. S.) 420.   Indeed, some of the franchises which are the subject of this action in fact were granted to individuals by the act of 1860, as above stated.   A special franchise of the character here sought to have declared forfeited is a grant of sovereign power springing from the state, and an action by the state in such a case is peculiarly appropriate. City of New York v. Bryan, supra.   The franchises mentioned in subdivision 3 of section 131 of the general corporation law refer to corporate franchises, and not to special franchises like those involved in this action, which are assignable.   It is true that in the case of People v. Broadway R. R. Co., supra, the court annulled the special franchise for using and operating a railroad in an action where it was also sought to have the charter of the railroad company forfeited, but the court upheld the right to declare a forfeiture of the special franchise upon the ground, as expressed in the opinion in the court of first instance (26 Abb. N. C. 413), that:

"As the right to bring an action to vacate the charter or annul its corporate existence exists, that power would seem to embrace within it the power to maintain an action to annul an added grant or franchise.  The lesser power is included within the greater."

It was not decided in the Broadway Case, supra, that an action by the people of the state to procure the forfeiture of a special franchise is not maintainable.   The law and authorities in this state upon this point expressly recognize the propriety of bringing such an action. In People ex rel. Hatzel v. Hall, 80 N. Y. 117, 119, it is said:

"Though the ancient writ of quo warranto and proceedings by information in the nature thereof are abolished, yet the remedies heretofore had in the forms of that writ and that information may now be obtained by civil action. It is only the form of the proceeding that is done away with.  The jurisdiction and power of the courts are not touched by that section, even if they could be by legislation; nor the right to seek and reach through them all the remedy which that writ or information once afforded."

But, aside from the common-law right for maintaining this action, it seems to me that any doubt on this head must be resolved by reference to section 1948 of the Code of Civil Procedure, which expressly declares that:

"The Attorney-General may maintain an action, upon his own information, or upon the complaint of a private person, in either of the following cases: 1. Against a person who usurps, intrudes into or unlawfully holds or exercises within the state, a franchise or a public office, civil or military, or an office in a domestic corporation."

The remaining subdivisions have no application to the case. Section 5 of the statutory construction law reads:

"The term person includes a corporation and a joint stock association." Laws 1892, c. 677.

We thus find special recognition of the right of the Attorney General to maintain this action against a person, which would include a corporation, for unlawfully holding or exercising "a franchise." Section 1948 of the Code of Civil Procedure evidently was framed upon the provisions of part 3, c. 9, tit. 2, § 28, in the first Revised Statutes, vol. 2, published in 1829, when the writ of quo warranto was still in force in this state. Section 28 reads as follows:

"An information in the nature of a quo warranto may be filed in the Supreme Court of this state, either in term time or in vacation, by the Attorney-General, against individuals, upon his own relation or upon the relation of any private party, and without applying to such court for leave, in either of the following cases: 1. When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in any corporation created by the authority of this state. 2. Whenever any public officer, civil or military, shall have done or suffered any act which by the provisions of law shall work a forfeiture of his office. 3. Where, any association or number of persons shall act, within this state, as a corporation without being legally incorporated."

In Thompson v. People ex rel. Taylor, 23 Wend. 537, which was an information in the nature of quo warranto charging individuals with using and exercising without lawful warrant the franchise of maintaining a·bridge across a navigable stream and demanding tolls from the persons passing over it, the president of the Senate said, at page 557:

"The remedy sought in this case is the legal and appropriate remedy. Our statute of 1788 was substantially a re-enactment of the statute of Anne. The Revised Statutes are much broader upon this subject and clearly embrace the present case. The remedy is there made equally proper in the case of any person originally usurping a franchise without title, and in that of a person unlawfully holding and exercising a franchise. This latter may be the case of a franchise the title to which was originally good, but the holding and exercising of which has become unlawful by means of the nonperformance of the conditions upon which the franchise was granted and upon which its title originally vested."

Senator Edwards, at page 562, stated:

"That a defendant unlawfully exercising a franchise may be ousted from a franchise by an information in the nature of a quo warranto."

To the same effect were the opinions of Senators Furman and Verplanck at page 570. Senator Verplanck discussed the meaning of the words "unlawfully holding," which are similar to the words employed in section 1948 of the Code, and held that:

"The breach of the conditions upon which a franchise is granted results in its forfeiture, and, therefore, as against the state, the franchise is unlawfully held." Page 576.

In that case, which resulted in a reversal of the lower court on a question of pleading, Senator Verplanck writing the prevailing opinion, we find that the right to maintain the action was unanimously entertained by the 21 senators who heard it. We thus find section 1948 of the Code is a substantial re-enactment of the statute in force

124 N.Y.S.—50

when proceedings in the nature of quo warranto were appropriate to a case like this, and that it affords ample authority for the maintenance of an action of ouster against one who is guilty of nonuser or misuser of a franchise. There is nothing in the statute requiring the Attorney General to obtain leave of court before bringing such an action, and in that respect differs from an action brought to dissolve a corporation in which it is expressly provided that leave of court to bring it is necessary.

I am of the opinion that the action is well founded, and that the demurrer to the complaint should be overruled.

Judgment for plaintiff upon pleadings.