2. STREET RAILROADS (§ 61*)—FRANCHISES—FORFEITURES.
   Where grants form part of an indivisible franchise of a corporation to construct and operate a street railroad, the failure of the corporation to use any part of the franchise or its abandonment thereof after user gives rise to questions as to the forfeiture of its rights in which the people are interested, and the action may be maintained by the Attorney General on their behalf.
   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50–54; Dec. Dig. § 61.*]

3. STREET RAILROADS (§ 61*)—FRANCHISES—FORFEITURES.
   General Corporation Law (Consol. Laws, c. 23) § 131, re-enacted from Code Civ. Proc. § 1798, authorizing the Attorney General on leave being granted to sue a corporation to annul its existence on enumerated grounds, does not authorize an action to forfeit a franchise of a corporation to construct and operate a street railway.
   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50–54; Dec. Dig. § 61.*]

4. QUO WARRANTO (§ 1*)—FRANCHISES—FORFEITURE.
   The Attorney General was vested at common law with authority to maintain quo warranto for the forfeiture of franchises of corporations, and the Legislature in abolishing quo warranto merely changed the form of procedure, so that the relief formerly obtained by quo warranto must be had in actions or by motions as prescribed by Code Civ. Proc. § 1983.
   [Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. §§ 1, 2, 23, 28; Dec. Dig. § 1.*]

5. QUO WARRANTO (§ 42*)—CONDITIONS PRECEDENT—LEAVE OF COURT.
   An action under Code Civ. Proc. § 1948, authorizing the Attorney General to maintain an action on his information against a person unlawfully exercising a franchise, may be maintained without leave of court.
   [Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 34; Dec. Dig. § 42.*]

6. QUO WARRANTO (§ 17*)—FORFEITURE OF FRANCHISES—ACTION—"PERSON."
   An action by the Attorney General on behalf of the people for the forfeiture of franchises of a corporation may be brought under Code Civ. Proc. § 1948, authorizing the Attorney General to maintain an action on his own information against a "person" unlawfully exercising a fran-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

chise; the word "person" in the section when considered in the light of the history of the legislation including corporations.

[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 18; Dec. Dig. § 17;* Corporations, Cent. Dig. § 79.

For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

Appeal from Special Term, New York County.

Action by the People of the State of New York against the Bleecker Street & Fulton Ferry Railroad Company and others. From an interlocutory judgment of the Special Term (67 Misc. Rep. 577, 124 N. Y. Supp. 782) overruling a demurrer to the complaint interposed by defendant named, it appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Ernest E. Baldwin (Henry Wollman, Benjamin F. Wollman, Edward S. Seidman, and Robert G. Starr, on the brief), for appellant.

Franklin Kennedy, Deputy Atty. Gen., for respondent.

Theodore Connoly (William P. Burr and William J. Clarke, on the brief), for respondent City of New York.

LAUGHLIN, J. This action is brought by the people to have certain parts of special grants or franchises to construct and operate a street railway in certain streets and public places in the borough of Manhattan, N. Y., forfeited, vacated, and annulled on the ground that they are being unlawfully held and used by the appellant and the other defendants other than the city of New York, and to oust and exclude them therefrom. The theory of the action with respect to part of the relief sought is that the rights have been forfeited by failure to fully construct and operate the railroad pursuant to the grant or franchise, and in other respects that, although the railroad was constructed and has been operated to an extent, it has been abandoned, or that there has been such nonuser that the right thereto has been forfeited. We agree with the views expressed in the learned opinion delivered at Special Term which sufficiently states the facts and correctly decides the questions of law, but we deem it proper to supplement it by a further expression of our views on some points argued on the appeal.

The demurrer is upon the ground that the complaint fails to state facts sufficient to constitute a cause of action, and that the plaintiff has not legal capacity to sue. Three points of law have been discussed at length in the briefs submitted by the learned counsel for the respective parties. The learned counsel for the appellant contends that the action can only be maintained pursuant to the provisions of section 131 of the general corporation law (Consol. Laws, c. 23), which were re-enacted without change from section 1798 of the Code of Civil Procedure, and that the consent of the court is condition precedent to the right to maintain the action. It is nc contended on the part of the respondents that the action can be main tained pursuant to said section 131 of the general corporation law

without the consent of the court.  Undoubtedly, if such consent be necessary, it is a condition precedent to the maintenance of the action, and must be alleged and proved.  People ex rel. Hearst v. Ramapo Water Co., 51 App. Div. 145, 64 N. Y. Supp. 532; Welsbach Co. v. Norwich Gas & El. Co., 96 App. Div. 52, 89 N. Y. Supp. 284, affirmed 180 N. Y. 533, 72 N. E. 1152; Scofield v. Doscher, 72 N. Y. 491; Milton Schnaier & Co. v. Grigsby, 132 App. Div. 854, 117 N. Y. Supp. 455.  The learned deputy Attorney General contends that authority for this action is found in section 1948 of the Code of Civil Procedure, or that it is authorized by the common law, and the learned counsel for the city takes the latter view, and is of opinion that it is not authorized by way of the provisions of the Code of Civil Procedure.

It is not contended in behalf of the appellant that the consents or grants in question do not constitute franchises within the contemplation of the statutory provisions to which reference has been made, conferring authority on the Attorney General, in some instances, with the consent of the court and in other instances without such consent, to maintain an action against the holder of the franchise.  It is apparently conceded that the right of the people to maintain such an action is authoritatively established by the decision of the Court of Appeals in City of New York v. Bryan, 196 N. Y. 158, 89 N. E. 467, in which it was decided that such grants or consents, when made pursuant to legislative authority, spring from the people and become part of the franchise of the corporation, in effect as if made directly by the Legislature itself.  Chief Judge Cullen in that case, writing for the court, speaking of municipal consents or grants pursuant to legislative authority, said:

"Therefore the consent of the city was but a step in the grant of a single, indivisible franchise to construct and operate a street railroad."

And it was held that:

"The legal status of that franchise and the rights of the defendants, or the company to which they succeeded, to the property and structures created in the execution of the franchise, should be determined only in a litigation between the people of the state, from whom the franchise sprang, and the defendants, wherein a determination will be binding and conclusive on everybody, and not in a suit between the defendants and third parties, unless it is absolutely necessary so to do."

In that action the city demanded judgment that certain franchises granted by the board of aldermen of the city of New York and of Long Island City to the New York & Long Island Railroad Company had ceased and determined for failure on the part of the grantee thereof to fully comply with the conditions of the grant with respect to the construction of a tunnel under the East River.  What is meant by the words quoted from the opinion of the court, "unless it is absolutely necessary so to do," is made clear by other parts of the opinion, in which it is stated that, if the city attempted to interfere with the rights claimed by the defendant and an application were made for an injunction, it would be necessary in such action to decide the controversy.  It is manifest, however, that, if such special con-

sents or grants from part of the indivisible franchise to construct and operate the railroad, then the failure of the company to use any part of the franchise, or the abandonment thereof after user, gives rise to questions with respect to forfeiture of its rights; in which the people are interested, and the action may doubtless be maintained by the Attorney General on their behalf. We do not therefore deem it necessary to consider that question further.

Section 131 of the general corporation law does not, we think, authorize this action even with the consent of the court. As already stated, that section was taken from section 1798 of the Code of Civil Procedure, which was embraced in article 4 of chapter 15 of title 2. The heading of that article is, "Action by the People to Annul a Corporation." The first section of that article authorizes an action by the Attorney General by the direction of the Legislature to procure the annulment of a corporation on the ground that its charter was procured through fraud. The second section of that article, being section 1798, provided as follows:

"Upon leave being granted, as prescribed in the next section, the Attorney General may bring an action against a corporation created by or under the laws of the state, to procure a judgment, vacating the charter or annulling the existence of the corporation upon the ground that it has, either, (1) offended against any provision of an act, by or under which it was created, altered, or renewed, or an act amending the same, and applicable to the corporation; or, (2) violated any provision of law, whereby it has forfeited its charter, or become liable to be dissolved, by the abuse of its powers; or, (3) forfeited its privileges or franchises, by a failure to exercise its powers; or, (4) done or omitted any act, which amounts to a surrender of its corporate rights, privileges and franchises; or, (5) exercised a privilege or franchise, not conferred upon it by law."

This action is not brought to annul the corporate existence of the holder of the franchises, or even to annul all of the franchises of the corporation. The Legislature evidently deemed it proper to require that the consent of the Supreme Court be obtained before an action should be brought against a corporation that might annul its charter and terminate its life, and the court was vested with discretion to grant or withhold such leave according to the circumstances of each case as presented. People v. B. S. & C. Co., 131 N. Y. 140, 29 N. E. 947, 15 L. R. A. 240; Matter of Attorney General, 81 Hun, 541, 30 N. Y. Supp. 1093; Matter of Attorney General, 124 App. Div. 401, 108 N. Y. Supp. 823; People v. N. R. S. R. & Co., 121 N. Y. 582, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843; People v. U. & D. R. R. Co., 128 N. Y. 240, 243, 28 N. E. 635. It is not, however, reasonable to infer that the Legislature intended to leave it discretionary with the court by granting or refusing its consent to the maintenance of an action by the Attorney General whether a corporation shall be permitted to exercise franchises which have not been conferred upon it and to disregard its charter obligations to the people or be called to accept therefor. It was held in People v. Broadway R. R. Co., 26 Abb. N. C. 407, Id., 56 Hun, 45, 9 N. Y. Supp. 6; Id., 126 N. Y. 29, 26 N. E. 961, which was an action praying for the annulment of the charter of the company, or in the alternative that certain franchises be deemed forfeited, that, notwithstanding the fact

that cause was not shown for the annulment of the charter, the court
would retain jurisdiction and decree that the company had forfeited
certain special franchises separately granted, but in that case the con-
sent of the court had evidently·been obtained, and, if authority ex-
isted under any of the provisions of the Code or at common law for
declaring the special franchises forfeited, the court was authorized to·
decree it.   The Court of Appeals did not consider the question as to
whether the action could be maintained under section 1798 of the
Code of Civil Procedure, and the court at General Term evidently was·
somewhat in doubt about it, and stated that, notwithstanding the ob-
jection, "we have preferred to consider this case upon the merits..
*  *  *  It may be that this case does not fall within the letter of
section 1797 and the other sections of the Code of Civil Procedure·
relating to an 'action by the people to annul a corporation.'  But we·
think the case is within the spirit of those sections, and of the com-
mon law which they were intended to embody."   And the learned'
Judge at Special Term based his decision in that respect upon the·
ground that the greater power included the lesser.

It has, however, been since held that section 1798 of the Code of
Civil Procedure does not authorize an action for the annulment and'
forfeiture of a special franchise as distinguished from the corporate·
charter.   People v. Westchester Traction Co., 123 App. Div. 689,
108 N. Y. Supp. 59;  People ex rel. Hearst v. Ramapo Water Co.,.
supra.   See, also, Matter of Attorney General, 124 App. Div. 401,
108 N. Y. Supp. 823.   The phraseology of the provisions of section·
1798 of the Code of Civil Procedure was not appropriate to authorize
an action primarily and solely to oust a corporation from the exercise
of a particular franchise or part thereof, and the fact that the court
in People v. Broadway R. R. Co., supra, in which the annulment of
the charter of the corporation was demanded, retained the action and
granted minor relief, is not, we think, a controlling authority on the·
construction of the provisions of law in question.   At common law
equity did not have jurisdiction of an action for relief such as that
here demanded (Attorney General v. Utica Ins. Co., 2 Johns. Ch. 371;.
Attorney General v. Pres. Bank of Niagara, etc., 1 Hopk. Ch. 354).
but the Attorney General was vested with authority to maintain quo·
warranto for such relief at common law (Joyce on Franchises, § 486;.
Booth on Street Railway Law, §§ 51, 52;  Attorney General v. Madi-
son Street Railway Co., 72 Wis. 612, 40 N. W. 487, 1 L. R. A. 771;·
People v. Bristol and Rensselaerville Turnpike Co., 23 Wend. 222;
Thompson v. People, 23 Wend. 537;  People v. Miner, 2 Lans. 396;·
17 Ency. P. & P. 448;  13 Cyc. 143;  State v. P. C. Water Co., 107
Wis. 441, 83 N. W. 697;  People v. Sutter Street Railway Co., 117
Cal. 604, 49 Pac. 736).   The Legislature in abolishing the writ of quo·
warranto did not intend to deprive the court of jurisdiction in cases
of this kind.   It was merely intended to change the form of pro-
cedure, and that the relief which formerly was obtained by quo war-
ranto and by informations in the nature of quo warranto and by scire
facias, should be had in actions or by motions as prescribed in the
Code of Civil Procedure.   Code Civ. Proc. § 428;  Code Civ. Proc. §·
1983, Throop's note;  People ex rel. Hatzel et al. v. Hall, 80 N. Y..

117; Herring v. N. Y., L. E. & W. R. R. Co., 105 N. Y. 340, 12 N. E. 763. We should expect, therefore, to find by some appropriate provision of the Code of Civil Procedure authority conferred on the Attorney General to maintain such an action, and we think it was conferred by section 1948, subd. 1. That section, so far as material, provides as follows:

> "The Attorney General may maintain an action, upon his own information, or upon the complaint of a private person, in either of the following causes: (1) Against a person who usurps, intrudes into, or unlawfully holds or exercises, within the state, a franchise, or a public office, civil or military, or an office in a domestic corporation."

No leave of the court is required to the maintenance of an action under that section. In Matter of Attorney General, 130 App. Div. 626, 115 N. Y. Supp. 393, we expressed a doubt as to whether the word "person" as used in subdivision 1 of this section includes corporations, but we refrained from expressing a decided view on the point. The question is now squarely presented for decision.

By the Revised Statutes, enacted in 1813, the consent of the court was required for the maintenance of an action either of the nature now prescribed by section 131 of the general corporation law, or by section 1948 of the Code of Civil Procedure (section 4, c. 11, Rev. Laws 1813), but a distinction was made in this regard by the Revised Statutes enacted in 1829. By section 39 of article 2 of chapter 9 of part 3 of the Revised Statutes, which corresponds with the provisions of section 131 of the general corporation law, such consent was required, but by section 28 of the same article, from which the provisions of section 432 of the Code of Procedure and section 1948 of the Code of Civil Procedure were derived, such consent, with respect to the actions thereby authorized to be brought, was dispensed with. Counsel for the appellant places considerable reliance upon the fact that said section 28 by express terms authorized an information in the nature of a quo warranto "against individuals." Counsel for the respondent, however, draws attention to the fact that sections 28 and 39 in the original revised statutes were in the same article, and that the relief authorized in actions brought as therein provided was prescribed in the same article by sections 48 and 49, and that section 48 was evidently designed to prescribe the relief to be granted on an information filed as authorized by section 28, and that section 49 was designed to prescribe the relief that might be granted on an information filed as authorized by section 39, and that the phraseology of section 48 shows that section 28 was intended to relate to an information filed against a corporation as well as individuals. The phraseology of section 48 corresponds with that contained in section 28, and the phraseology of section 49 corresponds with that contained in section 39, and thus tends to sustain the contention made by the learned deputy Attorney General.

Section 48 was as follows:

> "Whenever any defendant, whether a natural person or a corporation, against whom an information in the nature of a quo warranto shall have been exhibited, shall be found or adjudged guilty of usurping or intruding into, or unlawfully holding or exercising, any office, franchise or privilege; judgment

shall be rendered, that such defendant be ousted, and altogether excluded from such office, franchise or privilege; and also, that the Attorney General. or the relator, if there be one, recover his costs against such defendant. The court may also, in its discretion, fine such defendant any sum not exceeding two thousand dollars; which fine, when collected, shall be paid into the treasury of this state."

Section 49 was as follows:

"Whenever it shall be found or adjudged that any corporation against which an information in the nature of a quo warranto shall have been filed, has, by any misuser, non-user or surrender, forfeited its corporate rights, privileges and franchises; judgment shall be rendered, that such corporation be ousted, and altogether excluded from such corporate rights, privileges and franchises, and that the said corporation be dissolved."

The learned counsel for the appellant, however, contends that this is not controlling, and he cites People v. R. & S. R. R. Co., 15 Wend. 113, 30 Am. Dec. 33, in addition to People v. Broadway R. R. Co., supra, as showing that, in an action for the annulment of a corporation which was formerly authorized by said section 39 of the Revised Statutes, the courts would grant a judgment of ouster from some franchise without the annulment of the corporation, and that, therefore, a judgment on an information filed under section 39 was not confined to the relief prescribed by section 49. We are of opinion, however, that that does not destroy the argument that section 28 was to be construed with section 48, and that the two together show that the former was intended to relate to an information filed against a corporation as well as against individuals. Section 37 of the general construction law (Consol. Laws, c. 22), which superseded sections of the statutory construction law (chapter 677 of the Laws of 1892), provides so far as material to the questions now under consideration as follows:

"The term person includes a corporation and a joint-stock association."

Counsel for the appellant draws attention to section 110 of the general construction law, which superseded section 1 of the statutory construction law, and is as follows:

"This chapter is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter."

And he contends that the context of the language contained in section 1948 of the Code of Civil Procedure and the provisions of section 131 of the general corporation law show that the word "person" as employed in section 1948 was not intended to include a corporation. We are of opinion, however, for the reasons already assigned, that this argument is not sound. It was intended, we think, by the provisions of the Code of Procedure and of the Code of Civil Procedure to preserve in a different form the remedies that theretofore existed by quo warranto and by an information in the nature of quo warranto and by scire facias, and since, as has been seen, provisions of section 430 of the Code of Procedure and of section 1798 of the Code of Civil Procedure—now section 131 of the General Corpora-

tion Law—were not appropriate to an action brought solely to oust a corporation from the unlawful exercise of a franchise as distinguished from an action to annul the corporation, therefore section 1948 of the Code of Civil Procedure should be construed as conferring such authority since it is susceptible thereof.

Section 3345 of the Code of Civil Procedure provides that:

"The rule of the common law, that a statute in derogation of the common law is strictly construed, does not apply to this act."

This rule of construction tends to sustain the views herein expressed. We have not overlooked the contention of the learned counsel for the appellant that by the addition of subdivision 4 to section 1948 of the Code of Civil Procedure, by chapter 962 of the Laws of 1896, making that section applicable to an action against a foreign corporation, a legislative intent is shown that the section theretofore did not apply to a corporation. We are of opinion, however, that this is not a controlling consideration, for the reason that the amendment contains additional provisions and may have been intended for greater precaution, and is therefore entirely consistent with knowledge on the part of the Legislature that subdivision 1, of that section, as it then existed, applied to corporations as well as to individuals.

It follows, therefore, that the interlocutory judgment should be affirmed, with costs, with leave to the appellant to withdraw its demurrer and answer on the payment of costs of the appeal and of the demurrer. All concur.